**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KARYN PETERSEN, CHRISTINA MORRISON, and MARTIN LU, on behalf of themselves and all others similarly situated, | Case No. 1:20-cv-02568-CBA-RLM |
| Plaintiffs, | **DECLARATION OF RACHEL BIEN IN SUPPORT OF FLSA SETTLEMENT** |
| v. | |
| EMBLEMHEALTH, INC. and EMBLEMHEALTH SERVICES COMPANY, LLC, | |
| Defendants. | |

I, Rachel Bien, declare under penalties of perjury, the following:

1.      I am a partner at Olivier Schreiber & Chao LLP ("OSC"), which together with Kessler Matura P.C., represents the Plaintiffs in the above-captioned action.

2.      I am an attorney in good standing and licensed to practice law in New York and before this Court.  I make this declaration in support of Plaintiffs' Motion for Approval of FLSA Settlement.

**I.      Factual and Procedural Background**

3.      Named Plaintiffs Karyn Petersen, Christina Morrison, and Martin Lu and the twenty-two individuals who joined this case as collective members (together, "Plaintiffs") worked in New York for Defendants EmblemHealth, Inc. and EmblemHealth Services Company (collectively "Defendants"), LLC as Facilitated Enrollers, Individual Insurance Sales Representatives, and/or Marketplace Sales Representatives.

4.      Plaintiffs allege that Defendants misclassified them as exempt from overtime under the FLSA and New York Labor Law ("NYLL") and failed to provide them with compliant wage notices and statements under the NYLL.  Complaint, ECF No. 1.

**A.      Early Settlement Negotiations and Tolling**

5.      On August 6, 2019, the Named Plaintiffs, on behalf of themselves and others similarly situated, invited Defendants to engage in settlement negotiations before filing a lawsuit. The parties entered into a tolling agreement that tolled the claims of the Named Plaintiffs and all class and collective members for the six-year period prior to September 19, 2019.

6.      The parties then agreed to engage in settlement negotiations, exchange damages data and other relevant documentation necessary to analyze the merits of the case, and mediate on May 12, 2020 with Carol Wittenberg, an experienced employment law mediator with JAMS.

7.      Because the parties were unable to settle the claims at the mediation, the Named Plaintiffs filed this lawsuit on June 9, 2020.

**B.      Conditional Certification and Notice**

8.      After the lawsuit was filed, the parties engaged in discussions regarding whether Defendants would agree not to contest conditional certification under the FLSA and negotiate over the terms of a notice to collective members.  As part of this process, Defendants asked Plaintiffs to provide them with copies of the supportive declarations that they had collected in support of their conditional certification motion.  *See* ECF No. 25 (minute entry).  After reviewing the declarations, Defendants agreed to stipulate to conditional certification and the parties engaged in a negotiation regarding the terms of the notice.  ECF No. 29.  Subsequently, a Court-approved notice was sent to collective members.

9.      Plaintiffs' counsel engaged a claims administrator to send the notice to approximately 65 potential collective members.  The notice was issued on November 20, 2020. Ultimately, a total of twenty-five individuals filed consent to join forms, including the Named Plaintiffs.

**C.      Further Settlement Negotiations and Resolution**

10.      After the notice period closed, the parties agreed to resume their settlement negotiations with respect to the Plaintiffs' claims and to return to mediation with Carol Wittenberg.

11.      Before the mediation, Defendants provided updated and extensive payroll data which reflected among other things, hours worked, leave time, and various remuneration breakdowns, which Plaintiffs analyzed and discussed with Defendants.

12.      The parties then exchanged detailed damages spreadsheets and conferred over their respective merits positions and damages calculations in advance of the mediation.

13.      On March 24, 2021, the parties participated in a day-long mediation at which they agreed on the material settlement terms.

**II.      The Settlement**

14.      The parties agreed to settle the wage and hour claims of the Plaintiffs for $975,000.00, with Plaintiffs' counsel to seek one-third of the fund as their attorneys' fees plus their actual out-of-pocket costs and expenses through the conclusion of the case, up to a maximum of $10,000.00.  A fully executed copy of the settlement agreement is attached hereto as Exhibit A.

15.      The proposed settlement provides that each Plaintiff will receive a payment based on his or her eligible workweeks, which is a workweek in which a Plaintiff worked as a Facilitated Enroller, Individual Insurance Sales Representative, and/or Marketplace Sales Representative and in which he or she worked at least 3 days during the workweek as set forth in the data provided by

3

Defendants in advance of the parties' March 24, 2021 mediation.  Ex. A (Settlement Agreement) ¶ 1(a)(v).  The relevant period is the period from September 19, 2013 through February 18, 2021. *Id*.  The settlement also provides that the Named Plaintiffs will seek service payments in the amount of $7,500 each in exchange for signing a general release of claims and for their efforts on behalf of the collective.  *Id*. ¶¶ 1(a)(i), 3(c).

16.     The release provided by all Plaintiffs in exchange for their respective shares of the settlement fund (*i.e.,* not the general release by the Named Plaintiffs in exchange for a service payment) is limited to the claims that were alleged in the complaint.  Ex. A (Settlement Agreement) Ex. B (Release).  There is no reversion of any of the funds to Defendants.

17.     The settlement payment represents a substantial amount of Plaintiffs' potential damages.

18.     In advance of the parties' March 2021 mediation, Defendants provided Plaintiffs with payroll and general employment information for all Plaintiffs, which Plaintiffs' counsel used to generate damages calculations.  Based on interviews conducted with Plaintiffs and other documents produced by Defendants, Plaintiffs' counsel estimated that Plaintiffs worked up to 60 hours a week, excluding workweeks when a Plaintiff took vacation or sick days.  This resulted in unpaid overtime damages of approximately $3.8 million at the full time-and-a-half rate or $1.27 million at the half-time rate that Defendants argue applies.  Plaintiffs' counsel also determined that if Plaintiffs prevailed on their wage notice and statement claims under the New York Labor Law, they would be owed approximately $240,000 in penalties.  Thus, the $975,000 settlement is very favorable in light of the best possible recovery, giving sufficient consideration to the arguments and defenses presented by Defendants.  The average settlement payment is $24,700, and the payments range from $114.76 to $37,295.58, based on the number of eligible workweeks.

19.     The settlement will enable the parties to conserve their time and resources at a relatively early stage of the case, before they have embarked on costly document discovery, depositions, and motion practice.  If the case had not settled, the parties were set to engage in discovery relating to the Named Plaintiffs and all opt-ins, as well as class-wide discovery going back six years.  Defendants likely would have moved to decertify the collective and would have opposed Plaintiffs' motion to certify a class.  There also would likely have been summary judgment motion practice on Defendants' affirmative exemption defenses under the FLSA and NYLL.  The settlement will allow the parties to avoid these burdens and the associated expense.

20.     The settlement is the product of arms-length negotiations that took place over several years, including at two mediations.  Counsel for the parties are experienced wage and hour attorneys.  Moreover, counsel for Plaintiffs have litigated several cases on behalf of health insurance marketing representatives like the Plaintiffs in this case and brought their experience to bear in evaluating the strengths and weaknesses of the claims and the reasonableness of the settlement.  *See, e.g., Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (granting motion for settlement approval in case involving Amerigroup marketing representatives where Outten & Golden was counsel); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) (approving settlement on behalf of marketing representatives litigated by Outten & Golden and Shulman Kessler); *Willix v. HealthFirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) (settling $7.675 lawsuit on behalf of Healthfirst marketing representatives litgated by Outten & Golden).

21.     All of the twenty-five Plaintiffs have signed their release forms.

### III.    Request for Attorneys' Fees and Costs

22.    Plaintiffs request one-third of the Gross Settlement Amount as attorneys' fees to their attorneys, plus their attorneys' actual out of pocket litigation costs and expenses through the conclusion of the settlement of no more than $10,000.  Ex. A (Settlement Agreement) ¶ 1(a)(ii).

### A.    <u>Plaintiffs' Counsel's Experience and Qualifications</u>

23.    I received a Juris Doctor degree cum laude from Brooklyn Law School in 2005. After serving as a judicial clerk for the Honorable Thomas G. Nelson on the Ninth Circuit Court of Appeals, I joined Outten & Golden LLP in 2006, where I exclusively represented plaintiffs in employment litigation and other employee rights matters.

24.    In December 2020, I joined OSC as a partner where I continue to represent plaintiffs in individual and class action employment litigation.  OSC is a San Francisco-based firm representing individuals and classes in civil litigation and appeals.  OSC specializes in employment, consumer, and civil rights matters.

25.    I am a member of the California Employment Lawyer's Association and serve on the Executive Committee of the California Lawyers Association's Labor & Employment Law Section and on the Board of the Restaurant Workers' Community Foundation, an advocacy and action nonprofit created by and for restaurant workers.  I speak frequently on employment law and class action litigation issues.

26.    While at Outten & Golden, I was the co-head of the firm's class action practice group.  Over my career there, I was lead or co-lead counsel on dozens of class and collective action cases, many of which settled favorably for class members.  A few examples include:

- *Del Toro Lopez v. Uber Techs., Inc.*, 17-cv-06255-YGR (N.D. Cal. Nov. 14, 2018) (granting final approval of $10 million employment discrimination class action

6

settlement and approving Outten & Golden's hourly rates ranging from $250 to $850 "in light of the market for legal services of this type of quality").

- *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305 (S.D.N.Y. Oct. 24, 2017) (granting final approval of $5.707 million wage and hour settlement and stating that "Class Counsel are well qualified, experienced, and have aggressively litigated this action, thereby demonstrating their adequacy as counsel for the class").

- *Behzadi v. International Creative Management Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (certifying class and collective of unpaid interns and approving $725,000 settlement of wage and hour class action brought under New York and federal law).

- *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *3 (S.D.N.Y. October 5, 2012) (approving $5.25 million class action settlement on behalf of restaurant workers and noting that Outten & Golden attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and class action law").

- *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (approving $4,450,000 settlement in case involving Amerigroup marketing representatives).

27.     OSC and its partners also have had significant experience litigating complex employment and civil rights cases.  A few examples of OSC's work include:

- *Bowerman v. Field Asset Services, Inc., et al.,* No. 13-cv-00057-WHO (N.D. Cal.) (obtaining class certification and summary judgment, and obtaining verdict and judgment for first ten class members in excess of $7.5 million).

- *Ambrosio et al. v. Cogent Communications, Inc.,* Case No. 14-02182-RS (N.D. Cal.) (certified class action on behalf of California sales personnel for overtime violations, resulting in class-wide settlement of $3 million).

- *Bell v. Delta Air Lines,* No. 13-cv-01199-YGR (N.D. Cal.) (class action on behalf of California airline cargo workers for overtime violations, resulting in class-wide settlement of $1.4M).

28. Ernie Eastham is a paralegal at OSC who has been with the firm since October 2019. He received a B.A. in 2017 from the University of California Santa Cruz with a major in Business Management Economics.

**Fees Incurred in this Case.**

29. While I have been at OSC, our firm billed a total of approximately 48 hours as of May 27, 2021 on this matter, for a total lodestar of $37,250. The firms' total lodestar as of that date is $180,561.00, and thus they seek approximately 1.79 times their lodestar. The multiplier will be reduced due to the work that counsel will continue to do on the case to bring it to conclusion, including finalizing this motion, overseeing that payments are made, and issuing checks to Plaintiffs. The firms' total costs and expenses to date are $5,902.37. Any portion of the requested $10,000 in costs that is not expended in furtherance of the conclusion of the matter will be re-allocated to the Plaintiffs in their settlement payments.

30. The firms made every effort to litigate this case efficiently and avoid duplication of work among the firms. It was leanly staffed with just one partner and/or associate at each firm. Prior to filing the lawsuit, counsel attempted to negotiate a settlement with Defendants before any resources had been expended on formal litigation. Although that effort was not successful, even after the lawsuit was filed, the parties continued to litigate this matter efficiently including by

8

stipulating to conditional certification and returning to mediation before formal discovery commenced.

31.    Nonetheless, counsel had a sufficient understanding of the strengths and risks of the parties' respective positions as a result of the informal discovery they conducted, including interviews with opt-ins, review of payroll and electronic data produced by Defendants in advance of mediation, and based on their prior litigation of marketing representative misclassification cases.

32.    This case presented several litigation risks, including overcoming Defendants' merits defenses, establishing off-the-clock work in the absence of time records, and certifying a class.  Counsel took on these risks without any guarantee that they would ultimately be paid for their time and efforts.

33.    Attached hereto as **Exhibit B** are OSC's contemporaneous time records showing each biller's time, time entries, and hourly rates.  As set forth in the time records, counsel's time was spent preparing for mediation, including reviewing damages calculations and conferring with Defendants regarding their calculations, attending mediation, preparing the settlement papers, and communicating with Plaintiffs regarding the settlement terms.

34.    OSC's 2021 hourly rates are as follows:

| Name | Title | Law School Graduation Year | Hourly Rate as of January 1, 2021 |
|---|---|---|---|
| Monique Olivier | Partner | 1997 | $875 |
| Christian Schreiber | Partner | 2006 | $775 |
| Katharine Chao | Partner | 2006 | $775 |
| Rachel Bien | Partner | 2005 | $800 |
| Hannah Shirey | Associate | 2018 | $475 |

| | Paralegal | N/A | $250 |
|---|---|---|---|
| | Law Clerk | N/A | $225 |
| | Legal Assistant | N/A | $200 |

35.    Our firm continually monitors prevailing market rates charged by both defense and plaintiffs' law firms for individuals with similar levels of skill and experience who are doing comparable work as our attorneys and staff. We gather this information from surveys, the review of other fee applications, and conversations with attorneys in the relevant billing market. We set the billing rates for our firm to be consistent with the prevailing market rates in the private sector for attorneys and staff of comparable skill, qualifications and experience.

36.    Courts both in New York and California, where I am now based, have approved my billing rates and rates in the range that I seek in this case. *See, e.g., Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (granting motion for attorneys' fees with partner hourly rates of $550 to $750, my 2012 hourly rate of $420, and approving a multiplier of 3.53 times lodestar), ECF No. 98, Bien Decl. ¶ 9 (discussing multiplier), ECF No. 98-1, Ex. A (showing hourly rates); *Zamora v. Lyft, Inc.*, No. 16 Civ. 02558, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) (appointing Outten & Golden as class counsel in wage and hour case on behalf of drivers, and approving rates ranging from $280 to $850, including my 2018 rate of $725, as "reasonable in light of the market for legal services of this type and quality"); *del Toro Lopez v. Uber Techs., Inc.*, No. 17 Civ. 6255, 2018 WL 5982506, at *4 (N.D. Cal. Nov. 14, 2018) (appointing Outten & Golden as class counsel and approving Outten & Golden's hourly rates of $250 to $850, including my 2018 rate of $725).

37.    Courts have also routinely approved OSC's billing rates. *See, e.g., Toolajian v. Air Methods Corporation,* Case no. 3:18-cv-06722-AGT (N.D. Cal) (approving 2020 hourly rates of

10

$850 for Ms. Olivier and $750 for Ms. Chao); *Casteel v. Alaska Airlines, Inc.,* Case No. RCG20052826 (Alameda County Superior Court) (approving Ms. Olivier's 2020 rate of $850/hour and Ms. Chao's 2020 rate of $750/hour); *Bernstein v. Virgin America, Inc.*, Case No. 13-cv-02277-JST (N.D. Cal.) (approving the 2019 rates of $750 for Ms. Olivier and $650 for Ms. Chao); *Bowerman v. Field Asset Services, Inc.*, 15-cv- 00057-WHO, Dkt. 464 (N.D. Cal.) (approving the 2018 rates of $700 for Ms. Olivier); *Ambrosio v. Cogent Communications, Inc.*, 3:14-cv-02182-RS, Dkt. No. 169 (N.D. Cal.) (approving the 2017 rate of $675 for Ms. Olivier); *Balderas v. Massage Envy*, No. 12-cv-06327 NC, Dkt. Nos. 69-1, 78 (N.D. Cal.) (approving the 2014 rate of $600 for Ms. Olivier); *Bell v. Delta Air Lines*, No. 13-cv-01199 YGR, Dkt. Nos. 59-1, 67 (N.D. Cal.) (approving the 2014 rate of $600 for Ms. Olivier); *Guifu Li v. A Perfect Day Franchise, Inc.*, 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) (approving Ms. Olivier's 2011 hourly rate of $550); *Braga v. AccentCare, Inc.*, No. CGC-07-467071 (Super. Ct. San Francisco County) (approving Ms. Olivier's 2010 rate of $525).

38.    In addition to its contingency practice, OSC attorneys regularly charge hourly paying clients at the rates set forth above.

39.    The availability of competitive hourly rates directly influences the decisions my firm makes about whether to take or decline cases.  If our current hourly rates were unavailable in all or a majority of cases, I would not be able to maintain my contingent fee practice in the employment area; it would simply be financially impossible to do so.

40.    Plaintiffs' side contingency employment cases carry great risk for plaintiff's attorneys. Even where a defendant engages in a clear violation of an employee's rights, there may not be significant economic incentive for a plaintiff's attorney to agree to represent a plaintiff on a contingency basis.

41.    At both Outten & Golden and OSC, we turn down a majority of the potential clients who come to us seeking help, and unfortunately, for economic and business reasons, we turn down many otherwise meritorious cases. Many of my clients are able to seek legal redress and vindicate their important statutory rights as workers only because we offer contingency fee representation for cases we deem meritorious. It is difficult for many employees to find competent representation on an affordable or wholly contingent fee basis, where not only are fees contingent upon the claimant prevailing, but also the attorneys are advancing legal expenses along the way. It is even more difficult to secure such litigation representation if the employees present a potential case that involves complicated legal issues that have not been definitively resolved as in this case.

42.    In my experience, it is the possibility of recovering a substantial and fully compensatory fee award at the conclusion of a successful case that creates the necessary incentive for private attorneys to represent plaintiffs, and to ensure that individuals are able to enforce their rights under federal and state wage and hour laws. That is why it is an established and standard practice for attorneys who provide representation on a contingent basis to be awarded compensation in an amount greater than the standard hourly rate for pay-by-the-hour cases.

43.    In my opinion, it is critically important that courts award attorneys who take on workers' rights cases like this one on a contingency basis hourly rates that are reasonable, as well as appropriate multipliers, so that attorneys are willing take on time-consuming and risky cases that vindicate the important rights and public policies embodied in wage and hour statutes.

## IV.    Request for Service Payments

44.    The Named Plaintiffs request $7,500 each in service payments in exchange for signing a general release of claims and in recognition of the services that they provided to the collective.

45.     The Named Plaintiffs were closely involved in all steps of the case, including providing detailed factual information and documents to counsel, participating in negotiation and litigation strategy, attending the mediation, and reviewing the settlement terms to ensure that they were favorable to collective members.

46.     All of the Named Plaintiffs had long tenures at EmblemHealth and the factual knowledge they provided was of tremendous help to counsel in countering and evaluating Defendants' view of the facts.

I declare under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated:  June 7, 2021
        Los Angeles, CA

_Rachel Bien_
_____
Rachel Bien
**OLIVIER SCHREIBER & CHAO LLP**
1149 N. Gower St., Suite 215
Los Angeles, CA 90038
Telephone: (415) 484-0522
Email: rachel@osclegal.com

13